

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Ralph Logan
County Attorney
Tom Green County
San Angelo, Texas

Dear Sir:

Opinion No. Q-4926
Re: Commissioners' Court of Tom
Green County is not authorized
to expend county funds to estab-
lish a "blood plasma bank" in
connection with a civilian de-
fense protection program under
facts stated.

Your request for opinion has been received and care-
fully considered by this department. We quote from your re-
quest as follows:

"The Tom Green County Commissioners' Court
has been requested to appropriate funds to estab-
lish a 'blood plasma bank' at the three San Angelo
hospitals, in connection with a civilian defense
protection program in the event of an air raid
disaster.

"The mechanics of this plan are that blood
will be obtained from local donors. It will be
accepted by the local hospitals and sent to Baylor
Hospital in Dallas for processing. The natural
blood will be processed into dried plasma, which
will be returned to and held by three local hos-
pitals. The hospitals here will contribute their
services. The expense in connection with the plan
will come from a charge of $5.00 per unit made by
Baylor Hospital for processing. A unit will be
prepared from approximately one pint of blood.
It is planned to store fifty units at each one of
the three hospitals.

"The use to which the prepared plasma will
be put would be the general relief of civilian

Honorable Ralph Logan, Page 2

casualties, in the event of a bombing raid on the
city. In the event of such disaster, the supply
of plasma would presumably be used for all persons
injured regardless of their financial standing.
The use would be determined by emergency necessity
rather than financial ability.

"Your office is respectfully requested to ad-
vise whether Tom Green County can lawfully expend
some five hundred to one thousand dollars for the
preparation of this plasma.

"I attach hereto a brief citation of authori-
ties and discussion on this question as some assist-
ance in determining this question."

We quote from your brief as follows:

"Article 5, Section 18 of the Constitution of
Texas, creating the commissioners' court, reads in
part as follows:

"'. . .county commissioners so chosen with
the county judge as presiding officer shall
compose the county commissioners' court, which
will exercise such powers and jurisdiction over
all county business as is conferred by this
Constitution and the laws of the State, or as
may be hereafter prescribed.'

It is a well settled principle of law that the com-
missioners' court does not have any authority ex-
cept that which is expressly or impliedly conferred
upon it by law. Edwards County vs. Jennings, 33
S. W. 585; 11 Tex. Jur., p. 564.

"Article 2351, Vernon's Ann. Civil St., speci-
fies the general powers and duties of the commis-
sioners' court. In addition to the general powers
there enumerated, there are various special powers
enumerated in the statutes which have been passed
from time to time. The commissioners' court is
authorized to furnish fire protection in fire fight-
ing equipment.

"Article 4418f, Vernon's Ann. Civil St., permits the commissioners' court 'to appropriate and expend money from the general revenues of its county for and in behalf of public health and sanitation within its county.'

"Article 5844 authorizes the commissioners' court to appropriate not exceeding one hundred dollars per month for expenses in connection with the administrative units of the National Guard, and Article 5891-a provides for the appropriation by commissioners' courts to defray expense for equipment, armories, etc., for the Texas Defense Guard. None of these provisions seem to expressly cover the expenditure of funds for the purpose in the manner herein questioned. If the commissioners' court then has authority at all to so expend money on a blood plasma bank, it must be from the implied authority found in some of the above mentioned statutes or constitutional provisions.

"Section 11, Article 2351, Vernon's Ann. Civil St., states that the commissioners' court shall '. . .provide for the support of paupers and idiots and lunatics as cannot be admitted into the lunatic asylum, residents of their county who are unable to support themselves. By the term "resident" as used herein, it is meant a person who has been a bona fide inhabitant of the county not less than six months and of the state not less than one year.'

"The courts in construing the above statute have held the commissioners' court to have the authority to supply hospitalization to indigent citizens of its county. In the case of Willacy County vs. Valley Baptist Hospital, Civ. App., 29 S. W. (2d) 456, the Court held that counties are not liable as a matter of course for medical and hospital bills of an injured person leaving no estate. In this case the courts strongly intimated that neither the county judge nor an individual commissioner was clothed with authority to bind the county to any agreement made by such judge or commissioner, acting individually, to pay for services rendered

Honorable Ralph Logan, Page 4

a pauper; but that it is necessary that the commissioners' court as a body act in determining the necessity for support given paupers.

"The opinion of your department, No. O-4529, rendered on April 23, 1942, holding that the county has no authority to contribute funds to and support and maintain an office of Director of Civilian Defense, apparently, at least inferentially, prohibits the expenditure of funds for the preparation of blood plasma since the project is described as civilian defense. The use of the plasma, however, regardless of label affixed to the plan, should determine its legality. If the prepared plasma were used solely to provide medical care and treatment for indigents and paupers, after their status had been so determined by the commissioners' court, it is assumed that the county could lawfully pay for the preparation of such plasma.

"As the plan is presented, the use of the plasma would not be restricted to indigents, except to the extent that any citizen seriously injured in a bombing raid could be classified as an indigent. From a practical point of view, such an injured person could very reasonably be classified as a member of the indigent class, but this conclusion is based solely on probability, and is entirely speculative. In order for the plasma supply to be of value to the community in time of disaster, it would have to be administered to any person whose injuries indicated such medical treatment in an emergency, without regard to his financial standing.

"Since there seems to be no statute specifically authorizing any expenditure for the purpose of preparing blood for a blood plasma bank, and there seems to be no statute from which such powers can be necessarily implied from those expressly granted, it would appear that the commissioners' court is without authority to appropriate funds for the project as planned."

There is no statute specifically authorizing the expenditure of county funds for the purpose mentioned in your letter. It is our opinion that you have correctly determined

Honorable Ralph Logan, Page 5

that there is no statute from which such powers can be necessarily implied.

Under the facts stated and under the authorities cited in opinion No. O-4529 of this department, a copy of which is enclosed herewith, we respectfully answer your question in the negative.

We wish to express our appreciation for the excellent brief submitted.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Wm. J. Fanning
Assistant

WJF:mp
Encl.

APPROVED OCT 26, 1942

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN